UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS V. ROJAS,<br>    Plaintiff, | :<br>:<br>:   CASE NO. 3:21-cv-573 (MPS)<br>: |
| v. | :<br>: |
| JESUS GUADARRAMA, et al.,<br>    Defendants. | :<br>:<br>:   MAY 7, 2021<br>: |

_____

**ORDER**

Plaintiff Luis V. Rojas, incarcerated at Willard-Cybulski Correctional Institution in Enfield, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names two defendants, Warden Jesus Guadarrama and Captain/Administrative Director Luis Colon. The plaintiff contends that the defendants were deliberately indifferent to his health and safety through their management of the COVID-19 virus. He seeks damages as well as declaratory and injunctive relief.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.   <u>Allegations</u>

The incidents underlying this action occurred while the plaintiff was housed at Osborn Correctional Institution. As warden and "facility administrative director," the defendants are responsible for the welfare of the inmates in the facility. ECF No.1 ¶¶ 4-12.

The plaintiff tested negative for COVID-19 in May, July, and October 2020. *Id.* ¶¶ 15-17. During this time, the plaintiff was housed alone. *Id.* ¶ 18. There were numerous empty cells in the block and the facility. *Id.* ¶ 19. There also were 50 empty beds in the gymnasium, available to quarantine inmates who tested positive for COVID-19. *Id.* ¶ 20.

On November 4, 2020, inmate Marcello Edwards was assigned to the plaintiff's cell. *Id.* ¶ 21. Inmate Edwards had just been released from quarantine after testing positive for COVID-19. *Id.* Before being placed in the plaintiff's cell, inmate Edwards only had his temperature

2

taken. *Id.* ¶ 22. The nurse was called back to the medical unit before she could perform other tests and never returned to complete the tests before inmate Edwards was returned to general population. *Id.* ¶¶ 23-24. The plaintiff asked the block officer to remove inmate Edwards from his cell but was told he had to speak to the unit manager or he could refuse housing and go to segregation. *Id.* ¶ 25.

The following day, both defendants toured the housing unit. *Id.* ¶ 26. The plaintiff expressed his concerns over being housed with an inmate who had tested positive for COVID-19. *Id.* ¶ 27. Inmate Edwards told the defendants he was still sick and showing symptoms of COVID-19. *Id.* ¶ 29. Inmate Edwards stated he should be in quarantine, not general population. *Id.* ¶ 30. The plaintiff asked the defendants to move inmate Edwards to quarantine or one of the empty cells. *Id.* ¶ 31. The defendants replied that, if the medical unit had cleared inmate Edwards, there was nothing they could do. *Id.* ¶ 34.

On November 11, 2020, the plaintiff began experiencing headaches, body aches, and nasal congestion. *Id.* ¶ 40. On November 18, 2020, the plaintiff tested negative for COVID-19. *Id.* ¶ 42. The plaintiff complained to medical staff about his symptoms on November 19 and 20. *Id.* ¶¶ 43-44. On November 21, 2020, the plaintiff requested another COVID test, but was denied. *Id.* ¶ 45.

On November 22, 2020, the plaintiff complained that his symptoms were becoming unbearable and sought medical attention. *Id.* ¶ 46. Medical staff administered a COVID-19 test. *Id.* ¶ 47. The plaintiff tested positive and was symptomatic. *Id.* He was then placed in quarantine. *Id.* ¶ 48.

On November 23, 2020, the plaintiff was transferred to the COVID unit at MacDougall-

3

Walker Correctional Institution. *Id.* ¶ 49. He was placed in a cell with another inmate and told there was no treatment available. *Id.* ¶ 50. The plaintiff experienced severe head pain through November 30, 2020. *Id.* ¶¶ 51-57. On December 3, 2020, three tubes of blood were drawn. *Id.* ¶ 59. On December 6, 2020, the plaintiff's vital signs were checked and he was returned to Osborn Correctional Institution. *Id.* ¶ 60.

Weeks later, the plaintiff experienced blurred vision and difficulty breathing. *Id.* ¶ 61. The optician said he needed glasses and the plaintiff received bifocals in February 2021. *Id.* ¶¶ 62-64. On January 12, 2021, Dr. Stork examined the plaintiff and prescribed several medications. *Id.* ¶¶ 65-66. On January 14, 2021, the plaintiff underwent a chest x-ray. *Id.* ¶ 67. The radiologist told him his lung did not look normal. *Id.* ¶ 68.

II.  Analysis

    A.  Deliberate Indifference to Health and Safety

The plaintiff contends that the defendants were deliberately indifferent to his health and safety by housing him with an inmate who had tested positive for COVID-19. The plaintiff describes both defendants as supervisory officials. In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit clarified the standard to be applied to claims against supervisory officials. The Second Circuit adopted the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

To support his Eighth Amendment claims, the plaintiff must show that each defendant

4

"personally knew of and disregarded an excessive risk" to his health and safety when he refused to move inmate Edwards to another cell. *Id.* at 619 (citations and internal quotation marks omitted). The plaintiff must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that the defendant "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)). To satisfy the subjective component of the deliberate indifference test, the plaintiff must allege that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and … dr[e]w that inference"). Negligent conduct does not meet this standard. *Farmer*, 511 U.S. at 835.

Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes. *Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019). The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). The court makes that determination in light of the steps the facility has already taken to mitigate the danger. *Id.*

5

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. June 9, 2020) (citing cases). The plaintiff alleges that the defendants housed him in a cell with an inmate who had tested positive for COVID-19 and was just released from quarantine, and ignored inmate Edwards' statements that he continued to experience symptoms. As a result of the continued confinement with inmate Edwards, the plaintiff contracted COVID-19. Based on these allegations, the Court concludes that the plaintiff has plausibly alleged a serious risk of harm to satisfy the objective component.

Subjectively, the plaintiff alleges that he told the defendants his concerns about being housed with inmate Edwards and that inmate Edwards told the defendants he was still symptomatic. The defendants stated that there was nothing they could do as inmate Edwards had been cleared by the medical unit. Although the plaintiff describes his subsequent medical treatment, he alleges no facts suggesting that either defendant was involved in or even aware of the specific facts relating to the plaintiff's treatment for COVID-19. Thus, as *Tangreti* requires that the claim be based on the defendants' own actions, the Court must determine whether the refusal to move inmate Edwards constitutes deliberate indifference to the plaintiff's health.

Neither defendant is a medical staff member. As non-medical supervisory officials, the defendants are entitled to rely on information from the medical staff. *See, e.g., Houston v. Sheahan*, No. 13-CV-6594-FPG, 2017 WL 3425271, at *3 (W.D.N.Y. Aug. 9, 2017) ("it is well accepted in this Circuit that in general, supervisory prison officials may not be found liable for

6

constitutional violations involving medical care where they reasonably relied on the opinions of prison medical staff") (internal quotation marks and citations omitted); *McNamara v. Lantz*, No. 3:06-CV-93(PCD), 2008 WL 11391317, at *2 (D. Conn. Jan. 21, 2008) (same) (citing cases). The defendants were aware that inmate Edwards had been placed in quarantine for fourteen days after he tested positive for COVID-19 and had been released by the medical unit to general population. However, in light of the fact that the medical assessment was not completed before inmate Edwards was returned to general population, the Court lacks sufficient facts to determine whether the defendants' reliance on the medical staff was reasonable. Accordingly, the claims will proceed for further development of the record.

### B. Official Capacity Claims

The plaintiff seeks compensatory and punitive damages but does not indicate whether he seeks those damages from the defendants in their individual or official capacities. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan,* 440 U.S. 332, 343 (1979). Nor has the plaintiff alleged any facts suggesting that the state has waived immunity in this case. Thus, all claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff requests declaratory relief in the form of a statement indicating that the defendants violated his rights. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." *Colabella v. American Inst. of Certified Pub. Accountants*, No.

7

10-CV-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] past actions." *Id.* The plaintiff seeks a declaration that the defendants violated his Eighth Amendment rights, a request based on past actions. Thus, it is not a proper subject for declaratory relief. The request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In addition, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (citation, alterations, and ellipsis omitted). If the plaintiff prevails on his Eighth Amendment claim, a judgment in his favor would serve the same purpose as a declaration that the defendants were deliberately indifferent to his health and safety. Thus, the plaintiff's request for declaratory relief is not distinct from the relief sought for his section 1983 claims and is dismissed for this reason as well. *See, e.g., United States v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue, Greenwich, Connecticut*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

Finally, the plaintiff seeks injunctive relief in the form of an order that the defendants "refrain from allowing the unlawful conditions described herein to continue at Osborn

8

Correctional." ECF No. 1 ¶ 82. In the Second Circuit, an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). As the plaintiff now is confined at Willard-Cybulski Correctional Institution, his request for injunctive relief is dismissed as moot.

III.   Conclusion

The requests for damages against the defendants in their official capacities and the requests for declaratory and injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The case will proceed on the Eighth Amendment deliberate indifference claim against the defendants in their individual capacities.

The court enters the following additional orders.

(1)    **The Clerk shall** verify the current work addresses for defendants Guadarrama and Colon with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)    T**he Clerk shall** send the plaintiff a copy of this Order.

(3)    **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with

the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)   The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 7th day of May 2021 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge
